UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:13-cr-00084-GEB |
| Plaintiff, | |
| v. | **RESPONSE TO MOTIONS IN LIMINE** |
| SURJIT SINGH, et al., | |
| Defendants. | |

This order responds to pending motions in limine.

**I.  UNITED STATES OF AMERICA'S MOTION IN LIMINE NO. 1 — ADMISSION OF BUSINESS AND PUBLIC RECORDS**

The United States of America ("Government") moves for a ruling on the foundational admissibility of certain documents on which the Government intends to rely during the impending trial, arguing that the referenced documents

> are all self-authenticating under Federal Rule of Evidence 902 as certified copies of public records or certified domestic records of a regularly conducted activity and otherwise admissible under clearly established exceptions to the hearsay rule such as FRE 803(6) (Records of Regularly Conducted Activity), FRE 803(8) (Public Records), FRE 803(14) (Records of Documents That Affect an Interest in Property), and FRE 803(15) (Statements in Documents that Affect an Interest in Property).

Gov't Mot. In Limine No. 1 at 1:27-2:4, ECF No. 99. The Government also argues it "does not seek to preclude the defendants from challenging the admissibility of the business and public records on other grounds, such relevance or under FRE 403." Id. at 9:5-6. The records on which the Government seeks foundation rulings are "bank records, loan files, escrow files, employment records, phone records, and certified copies of public records such as trustee's deeds upon sale/trustee's deeds, notices of trustee's sale, notices of default, tax return records, California driver's licenses, and immigration A-files." Id. at 1:23-26. The motion includes an exhibit listing the the referenced documents, a general description of each document, and the entity from which each document was obtained. See Ex. 1, ECF No. 99-1. Defendants have not opposed the motion.

The motion is granted.

## II.  THE GOVERNMENT'S MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY, DOCUMENTS AND ARGUMENT OF ANITA SHARMA'S ALLEGED PAST DOMESTIC ABUSE

The Government also moves for an order excluding "testimony, documents and argument [concerning Defendant Anita Sharma's] past domestic abuse." Gov't Mot. In Limine No. 2 at 1:22-23, ECF No. 100. Defendant Sharma has not opposed the motion and has not indicated that she will seek admission of such evidence during the trial. See generally Def. Sharma's Mot. In Limine ("Sharma Mot."), ECF No. 101. The Government states it "is uncertain whether Sharma intends to try to present any testimony or documents about her alleged domestic abuse at trial," Gov't Mot. In Limine No. 2 at 3:3-4, but argues that "[i]f she does, such information is improper and should be

2

excluded," id. at 3:4. The Government has not shown that this issue involves a controversy that is concrete enough for an in limine ruling; therefore, an in limine ruling will not issue.

### III. DEFENDANT ANITA SHARMA'S MOTION TO EXCLUDE UNNOTICED EXPERT TESTIMONY

Defendant Anita Sharma seeks an in limine ruling excluding expert witness testimony arguing:

> Federal Rule of Criminal Procedure 16(g) requires the government to provide, upon defense request, a written summary of the testimony of expert testimony the government intends to use at trial. Under the rule, this summary must "describe the witnesses opinions, the bases and reasons for these opinions, and the witnesses' qualifications." Id.

> At the present time, the government has not provided any notice of any expert to testify about generally accepted loan and credit principles or any accounting done in this case. Accordingly, . . . this Court [should] exclude any witness the government prepares to offer to testify based upon a lack of notice. Ms. Sharma argues that the government should not be permitted to skirt their obligation by qualifying a witness prepared to address such topics as a "summary witness." . . . .

> . . . [T]he Ninth Circuit has repeatedly warned about the dangers of summary witness testimony. For one thing, "[p]ermitting an 'expert' witness to summarize testimonial evidence lends the witness' credibility to that evidence and may obscure the jury's original evaluation of the original witnesses' reliability." United States v. Baker, 10 F.3d 1374, 1412 (9th Cir. 1993), overruled on other grounds by United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000). In addition, an expert is prone to present a "selective summary [that] itself constitute[s] a subjective determination of reliability." Id. Where the defense relies in significant part on attacking the credibility of the government's witnesses, a "summary" of this sort is tantamount to vouching.

3

Moreover, it is traditionally the lawyer's job to summarize the evidence for the jury. See id. (noting that "a summary of oral testimony is generally the purpose and province of closing argument, and we believe it would have been more appropriate for the prosecutor to present Agent Besse's summary exhibits and valuations in his closing remarks"); United States v. Fullwood, 342 F.3d 409, 413 (5th Cir. 2003) ("strongly cautioning" against the use of summary testimony "as a substitute for, or a supplement to, closing argument"). To ensure the government does not get a de facto second closing, the trial court must take care to circumscribe the limits of the expert's opinions. While summary experts can "summariz[e] voluminous records, as contemplated by Rule 1006, they may not distill the jury's ultimate conclusions from a body of evidence." United States v. Akins, 746 F.3d 590, 600-01 (5th Cir. 2014). Accordingly, even if the government does not designate an expert witness, it should not be permitted to allow one of its professional witnesses to summarize all the testimony presented in the case thus far and provide an expert summary of the evidence presented.

Sharma Mot. 7:3-8:9.

The Government responds:

Even if the expert disclosure deadline had passed, the United States can still use a non-expert summary witness at trial. United States v. Olano, 62 F.3d 1180, 1203-04 (9th Cir. 1995) (federal agent did not give expert testimony; rather he permissibly served as a summary witness); United States v. Lemire, 720 F.2d 1327, 1347 (D.C. Cir. 1983) (courts have rejected the argument that non-expert summary witnesses are improper under Federal Rule of Evidence 602). Sharma provides no authority that a summary witness *must* be an expert. To the contrary, she cites United States v. Baker, 10 F.3d 1374, 1412 (9th Cir. 1993), which defeats her argument. In Baker, the Ninth Circuit found the agent had "no experience or expertise regarding the street value of narcotics" and her "simple arithmetical calculations were not an appropriate subject for expert testimony under Rule 702" but "admitting [her] testimony was a valid exercise of the

4

district court's discretion under Fed. R. Evid. 611(a) . . . ." _Id._ at 1411-12, overruled on other grounds in United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000). The federal rule authorizing summary testimony does not contain an expert requirement; instead, it merely states "the content of voluminous writings, recordings or photographs which cannot be conveniently examined in court may be presented in the form of a chart, summary or calculation." Fed. R. Evid. 1006. Thus, Rule 1006 only requires that the underlying records be voluminous and that in-court examination be inconvenient – not that the summary witness be an expert. _Id._; United States v. Duncan, 919 F.2d 981, 988 (5th Cir. 1990), cert. denied, 500 U.S. 926 (1991) (FBI agent appropriately provided summary testimony and charts); _see also_, United States v. Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988) (although the underlying materials upon which the summary testimony is based must be "admissible," they need not be actually admitted into evidence).

There is no legitimate dispute that the Ninth Circuit allows the use of non-expert summary witnesses. Goldberg v. United States, 789 F.2d 1341, 1343 (9th Cir. 1986) (non-expert IRS agent appropriately provided summary testimony of voluminous records); United States v. Shirley, 884 F.2d 1130, 1133 (9th Cir. 1989), quoting Lemire, 720 F.2d at 1348)(rejected defendant's argument that DEA summary was improper expert testimony under Rule 702 and as a summary under Rule 1006); Meyers, 847 F.2d at 1411-12 (two non-expert FBI special agents on the surveillance team properly testified about a summary chart of the surveillance logs). The Ninth Circuit has repeatedly recognized that summary witnesses "can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of the multitude of witnesses." Shirley, 884 at 1133, quoting Lemire, 720 F.2d at 1348); Meyers, 847 F.2d at 1412 (approving the use of a summary witness where the sequence of events was confusing and the chart contributed to the clarity of presentation); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980).

Sharma's general complaints about summary

witnesses also do not warrant exclusion. For instance, Sharma complains that a "selective summary" is tantamount to "vouching," but the case she cites does not make this comparison. Dkt. 101 at 7, citing Baker 10 F.3d at 1412. Moreover, in that case, the Ninth Circuit held the "selective summary" was admissible because "the defense had full opportunity to cross examine [the agent] about her methods of preparing the summaries, her alleged selectivity, and her partiality." Id. Similarly, Sharma's argument that it is "the lawyer's job to summarize the evidence for the jury" also does not warrant exclusion. Dkt. 101 at 7. The two cases Sharma cited do not support exclusion. Dkt. 101 at 7. In United States v. Fullwood, 342 F.3d 409, 414 (5th Cir. 2003), the court noted possible risks but found there was not reversible error and confirmed that "such witnesses may be appropriate for summarizing voluminous records, as contemplated by Rule 1006." In United States v. Akins, 746 F.3d 590-600-601 (5th Cir. 2014), the court found there was no reversible error and the agent "neither testified as a 'summary witness' within the meaning of this Court's precedent nor served to 'merely tell the jury what result to reach.'" Id. at 600.

The foregoing confirms that in this case, the United States can use a federal agent at trial to summarize thousands of pages of voluminous bank records, escrow documents, title records, phone records, and recorded documents for the transactions relating to the bank and mail fraud scheme. Copies of these documents have already been provided to defense counsel along with the accompanying 902(11) certifications.

Gov't Opp. Sharma Mot. 12:18-14:14.

The law is clear that summary witnesses are permissible and that these witnesses do not have to be qualified as experts. Therefore, this motion is denied.

### IV.   DEFENDANT SHARMA'S MOTION TO EXCLUDE INTRODUCTION OF CO-SCHEMER AND CONSPIRATOR STATEMENTS

Defendant Sharma also moves for exclusion co-conspirator statements.   This motion consists of Sharma's

6

arguments concerning the legal requirements for admitting co-conspirator statements, which is followed by her assertions that the Government has not yet offered which statements or actions it will use to prove a conspiracy. Sharma Mot. 8:12-9:21. The Government responds:

> The United States anticipates calling as witnesses in its case straw-buyers, sellers, law enforcement agents, real-estate professionals, renters and a notary and tax preparer who had communications with the defendants and their coconspirators concerning property transactions. Some of these witnesses are expected to testify, among other things, as to statements made to them by the defendants and other coconspirators with respect to property transactions. These statements are admissible when offered by the United States. First, many of the statements are not hearsay because they are not being offered for the truth of the matter asserted (the United States is offering many of the statements because they were lies). Second, the statements will be admissible as statements of a party opponent and co-conspirator admissions. Fed. R. Evid. 801(d)(2). In the case of co-conspirator statements, the statements should be conditionally admitted subject to the United States laying the appropriate foundation.

> . . .

> . . . In order for a coconspirator's out-of-court statement to be admitted against a defendant, the prosecution must show by preponderance of the evidence that: (1) the conspiracy existed when the statement was made; (2) the defendant had knowledge of, and participated in, the conspiracy; and (3) the statement was made in furtherance of the conspiracy. United States v. Larson, 460 F.3d 1200, 1211 (9th Cir. 2006) on reh'g en banc, 495 F.3d 1094 (9th Cir. 2007). . . .

> . . .

> A hearing is not required before the admission of a co-conspirator statement; the Court may conditionally admit coconspirator

7

statements before all of the foundational elements are established. <u>United States v. Perez</u>, 658 F.2d 654, 658 (9th Cir. 1981); <u>United States v. Zemek</u>, 634 F.2d 1159, 1169 n.13 (9th Cir. 1980); <u>United States v. Sandoval-Villalvazo</u>, 620 F.2d 744, 747 (9th Cir. 1980). The United States recommends this procedure. With the planned introduction of numerous statements from many witnesses, it would create a substantial burden on the Court and the parties to have a hearing prior to the admission of each statement. If the defendants wish to have any statements stricken, they should move to do so shortly before the government concludes its case-in-chief.

In this case, the proof at trial will show that Sharma engaged in a conspiracy with co-defendants Surjit Singh and Rajeshwar Singh along with other coconspirators in order to defraud lenders and make false statements to banks. As such, the statements of coconspirators may be admissible against the trial defendants, including Sharma.

Gov't Opp. Sharma Mot. 15:6-16:26.

"The order of proof [is] within the discretion of the trial court," <u>United States v. Peterson</u>, 549 F.2d 654 (9th Cir. 1977) (citing <u>United States v. Sandoval-Villalvazo</u>, 620 F.2d 744, 747 (9th Cir. 1980)), and "[t]here is no immutable order of proof." <u>United States v. Perez</u>, 658 F.2d 654, 658 (9th Cir. 1981). "The contested statements may be admitted conditionally as long as the court in the proper exercise of its discretion determines that a motion to strike could cure defects resulting from insufficient proof of the necessary preliminary facts." Id. (citing <u>United States v. Watkins</u>, 600 F.2d 201, 204 (9th Cir.), cert. denied, 444 U.S. 871 (1979)).

In light of the proffered evidentiary showing the Government has made in its filings, the Government will be

permitted to introduce coconspirator statements conditionally, subject to later determination of their ultimate admissibility. See Perez, 658 F.2d at 658-59. Therefore, Sharma's motion on this matter is denied.

## V. DEFENDANT SHARMA'S MOTION TO EXCLUDE THE INDICTMENT

Defendant Sharma moves to prevent the indictment from being given to the jury. Sharma Mot. 9:23-10:2. The Government responds stating it "defers to the Court's usual practice as to whether the indictment should be presented to the jury." Gov't Opp. Sharma Mot. 19:22-23. The Court's practice is to state the charges in the jury instructions; and, absent a cogent request explaining why the jury should receive the indictment or any portion thereof, the jury will not be given a copy of the indictment or any portion of it.

## VI. DEFENDANT SHARMA'S MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Defendant Sharma moves for "[a]n Order requiring production of Grand Jury transcripts," Sharma Mot. 2:6, but only provides a conclusory statement that does not justify the request. Therefore, the motion is denied.

## VII. DEFENDANT SHARMA'S MOTION TO IMPOSE A DISCOVERY DEADLINE

Defendant Sharma also seeks to exclude "admission of documents not yet produced in discovery," Sharma Mot. 2:3-4, but the motion is too conclusory to justify a ruling. Sharma does include authority in her reply brief, citing Local Rule 440. However, as the Government argues in response to the motion, including this new argument in the reply brief is improper. Gov't Opp. Sharma Mot. 14:16-22. Therefore, this motion is

9

denied.

## VIII. DEFENDANTS' MOTIONS TO EXCLUDE EVIDENCE OF ADDITIONAL TRANSACTIONS

Defendant Rajeshwar Singh moves to "exclude any evidence of misconduct in connection with loans not charged in the indictment." Def. Rajeshwar Singh's Mot. In Limine Exclude Uncharged Misconduct ("Rajeshwar Singh Mot.") 5:22-23, ECF No. 98. Defendant Surjit Singh requests leave of the court to join this motion. Def. Surjit Sing's Mot. Join Rajeshwar Singh Mot., ECF No. 105. The Government opposes Defendant Rajeshwar Singh's motion. Gov't Opp. Rajeshwar Singh Mot., ECF No. 103. Separately, Defendant Anita Sharma also moves to, among other things, exclude evidence of uncharged misconduct. See Sharma Mot. 3:23-7:1. The Government opposes that motion, see Gov't Opp. Sharma Mot., ECF No. 104, and Defendant Sharma filed a reply, see Def. Anita Sharma's Reply Gov't Opp. Sharma Mot. ("Sharma Reply"), ECF No. 106.

Defendants are charged in connection with an alleged mortgage fraud scheme involving the Sacramento, Stanislaus, and San Joaquin Counties. Indictment 1:28-2:2, ECF No. 1. Defendants Surjit Singh and Rajeshwar Singh are alleged to have recruited strawbuyers, including Defendant Sharma, to purchase homes they could not afford by submitting fraudulent loan applications to lending institutions. Id. 2:3-15. The Indictment specifies four properties as involved—10254 Gilliam Drive, Elk Grove; 8001 Cavalier Way, Sacramento; 1977 San Ramon Way, Modesto; and 648 Queensland Circle, Stockton—but also specifies that "[a]dditional properties not listed in this Indictment were also subject to the

10

fraud scheme and resulted in further losses to various lenders."
Id. 3:1-9.

The Government sent defense counsel a letter on August 21, 2017, informing them that it "may seek admission of evidence concerning Anita Sharma's purchases" of several other properties. Gov't Opp. Rajeshwar Singh Mot., Ex. 1, ECF No. 103-1. The Government stated in the letter its conviction that evidence of Anita Sharma's other purchases "do not constitute evidence pursuant to Rule 404(b) of the Federal Rules of Evidence" because the "transactions all fall within the scheme with which the defendants are charged." Id. The Government also stated: "in the exercise of complete caution, the United States provides notice that it may seek admission of this evidence against all three defendants pursuant to Rule 404(b)." Id. The Government further disclosed that it "may seek admission of evidence concerning Satnam Satnam's purchases of [other properties] pursuant to Rule 404(b) against defendants Surjit Singh and Rajeshwar Singh." Id.

The Government "follow[ed] up" on that letter on September 16, 2017. Id. Ex. 2, ECF No. 103-2. In that letter, the Government informed Defendants' counsel that it "may seek to introduce evidence concerning Satnam Satnam's purchases of 1302 Orchard Lane, Patterson, CA; 17702 Almond Orchard Way, Lathrop, CA; 1405 Oasis Lane, Patterson, CA; 8069 Shay Circle, Stockton, CA; and 39 Sean Avenue, Tracy, CA as part of the scheme alleged," id., and further explained:

> Satnam Satnam was recruited by Surjit and Rajeshwar Singh in order to purchase five properties within five months between

11

> September 2006 and January 2007. He was
> romantically involved with Anita Sharma at
> the time. There were misrepresentations with
> respect to his purchases, including his
> occupation, income, assets, liabilities, and
> intent to occupy the premises. There were
> fraudulent CPA letters used for the
> transactions, just as there were for Mr.
> Coleman and Ms. Sharma.

Id. The Government also wrote that "[i]n the alternative, as the United States stated in its August 21, 2017 letter, the United States may seek to introduce this evidence pursuant to Rule 404(b) of the Federal Rules of Evidence against defendants Surjit Singh and Rajeshwar Singh." Id.

The Government next wrote:

> [T]he United States may seek to introduce
> evidence of Shailendra Singh's purchases of
> 3657 Blisted Way, Sacramento, CA; 7846
> Lahontan Court, Sacramento, CA; and 1639
> Southpointe Drive, Yuba City, CA against
> defendants Surjit Singh and Rajeshwar Singh
> pursuant to Rule 404(b). These purchases
> likewise involved misrepresentations
> concerning income, employment, assets,
> liabilities, and intent to occupy the
> premises. Once again fraudulent CPA letters
> were used.

Id. The Government also wrote:

> [T]he United States may seek admission of
> evidence concerning Rajeshwar Singh's
> purchases and financing of 5212 Union Avenue,
> San Jose, CA; 2280 Rosemount Lane, San Ramon,
> CA; 1977 Sam Ramos Way, Modesto, CA; 648
> Queensland Circle, Stockton, CA; 17702 Almond
> Orchard Way, Lathrop, CA; 1405 Oasis Lane,
> Patterson, CA; and 39 Avenue, Tracy, CA,
> which are all properties involved in the
> current scheme. When Rajeshwar Singh financed
> these properties we believe he represented to
> the lenders that he intended to live in all
> of them as his primary residence, one of the
> same lies he helped Anita Sharma, Duane
> Coleman, Satnam Satnam, and Shailendra Singh
> make. (We are certain he did this with

12

respect to 648 Queensland Circle, Stockton, CA; 17702 Almond Orchard Way, Lathrop, CA; 1405 Oasis Lane, Patterson, CA; and 39 Avenue, Tracy, CA and are looking into the other properties.) Such evidence would go to his intent, preparation, plan, knowledge, identity, absence of mistake and lack of accident with respect to the scheme he participated in with Surjit Singh and Anita Sharma.

Id.

### A. Defendant Rajeshwar Singh's Motion

Defendant Rajeshwar Singh argues that "[t]he government . . . has had four and a half years to supersede if new charges were appropriate," Rajeshwar Singh Mot. 5:16-17, and that the evidence the Government seeks to introduce runs afoul of Federal Rule of Evidence 404(b), id. at 4:23-5:6. The motion does not challenge the admission by the Government of evidence of Defendant Anita Sharma's uncharged purchases, focusing only on Satnam Satnam, Shailendra Singh, and Rajeshwar Singh. See generally id.

Rule 404(b) of the Federal Rules of Evidence prescribes that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but that "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The Ninth Circuit has "uniformly recognized that the rule is one of inclusion and that other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." United States

13

<u>v. Mehrmanesh</u>, 689 F.2d 822, 830 (9th Cir. 1982). "The Government, however, must carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." <u>Id.</u>

Defendant Rajeshwar Singh argues:

> The government's letter to the defense does not come close to 'articulat[ing] precisely the evidential hypothesis' which makes this uncharged acts evidence admissible. As to each of the uncharged acts of alleged misconduct, the government quotes Rule 404(b) in the hope that this mere recitation will make the evidence admissible. It does not.

Rajeshwar Singh Mot. 4:24-27. But <u>Mehrmanesh</u> does not stand for the proposition that the Government must make this demonstration in its notice to a defendant. The Government need only "provide reasonable notice of the <u>general nature</u> of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b)(2)(A) (emphasis added). <u>Mehrmanesh</u> imposes a more exacting requirement on the Government before a court can actually admit such evidence.

The Government first argues in response that Satnam Satnam's purchases do not fall within Rule 404's ambit at all. The Government argues that the indictment includes reference to "additional properties not listed" which were "also subject to the fraud scheme and resulted in further losses to various lenders," Gov't Opp. Rajeshwar Singh Mot. 5:5-6 (quoting Indictment 3:7-9, ECF No. 1), and, in any event, cites <u>United States v. Loftis</u>, 843 F.3d 1173, 1175-76 (9th Cir. 2016) in

14

support of an argument that evidence of Satnam Satnam's purchases "would be admissible as acts going directly to the existence of the mail fraud and bank fraud scheme alleged," Gov't Opp. Rajeshwar Singh Mot. 5:16-17.

Loftis and the authority cited therein control this question. In Loftis, the Ninth Circuit decided a similar issue stating "it became clear the government intended to offer evidence of investor victims not specifically named in the indictment, [and] additional uses of the wires and aspects of the scheme carried out in states other than Montana." 843 F.3d at 1175. "Loftis moved in limine to exclude this evidence, arguing the district court should 'limit the government's case to evidence regarding the three named investors and alleged criminal activity involving Montana.'" Id. The District Court granted the motion in part, and the Government took an interlocutory appeal. Id. The Ninth Circuit held:

> Rule 404(b) applies solely to evidence of "other" acts, not to evidence of the very acts charged as crimes in the indictment. As a leading treatise explains, "[o]ne of the key words in determining the scope of Rule 404(b) is 'other'; only crimes, wrongs, or acts 'other' than those at issue under the pleadings are made inadmissible under the general rule." 22B Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239 (1st ed. 2016).
>
> . . .
>
> . . . As we recently explained, "the commission of . . . a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole . . . , including additional executions of the scheme that were not specifically charged." United States v. Lo, 839 F.3d 777, 793 (9th Cir. 2016). The uncharged transactions, therefore, are part of the charged offense—the

15

> fraudulent scheme as a whole—not "other" crimes or "other" acts evidence. Rule 404(b) thus does not preclude the government from introducing evidence of uncharged transactions to prove . . . the existence of a scheme to defraud.

_Loftis_, 843 F.3d at 1175. Rule 404(b), therefore, is inapplicable to the admission of evidence of the Satnam Satnam purchases.

The Government does not seek justify evidence of the Shailendra Singh or the uncharged Rajeshwar Singh purchases under the principle involved in _Loftis_. Instead, it seeks to have the evidence admitted under Rule 404(b).

> The test for admitting evidence under 404(b) is whether: 1) it tends to prove a material fact; 2) the prior act is not too remote in time; 3) the evidence is sufficient to support a finding that the defendant committed the act; and 4) where knowledge and intent are at issue, the act is similar to that charged.

_United States v. Tsinnijinnie_, 91 F.3d 1285, 1288-89 (9th Cir. 1996) (citing _United States v. Mayans_, 17 F.3d 1174, 1181 (9th Cir. 1994)).

The Government argues:

> Shailendra Singh purchased three properties from April 2007 to May 2007 with the help of Surjit Singh and Rajeshwar Singh. Rajeshwar Singh was the loan officer on at least two of these properties-3657 Blisted Way in Sacramento and 7846 Lahontan Court, Sacramento. The loan applications on these two properties contained material misstatements as to Singh's intent to occupy the residences, his income, and his liabilities. The Singhs used the same tax preparer as used on Sharma's, Coleman's, and Satnam's loans, to generate tax returns to support employment representations on the loan applications. This evidence is

16

admissible against Rajeshwar Singh[1] as Rule 404(b) evidence.

First, the evidence concerning Rajeshwar Singh's participation in other fraudulent purchases tends to prove a material fact. As discussed above, uncharged acts of loan fraud are admissible to prove knowledge, absence of mistake, and intent to defraud and influence lenders. Hicks, 217 F.3d at 1046- 47; Jenkins, 785 F.2d at 1395. Here Rajeshwar Singh's involvement in lying to facilitate Shailendra Singh's purchases of properties goes to his opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake in the conduct alleged in the indictment in this case. Rajeshwar Singh had knowledge that he was participating in a scheme where material misstatements were being made on loan applications. He intended to defraud lenders and influence them to give him, his family members and the straw buyer money associated Sharma's, Coleman's, and Satnam's purchases of properties. He had concurrently made some of the same misrepresentations in order to facilitate Shailendra Singh's purchase of properties. He, working as a loan officer, knew how to get loans approved based on misrepresentations. It was his plan. He, not someone else, was processing fraudulent loans. Rajeshwar Singh's involvement in this scheme was not just some mistake or accident. He knew he was engaging in a scheme to defraud with his co-defendants and he intended to deceive and cheat.

Second, Satnam's conduct is not too remote in time. It is not remote at all. The conduct completely overlaps the conduct charged in the indictment in this case. Here, the fraud associated with the Sharma, Coleman and Satnam properties lasted from approximately mid-2006 to mid-2007. Shailendra Singh's purchases were in approximately April and May of 2007.

Third, the evidence of Rajeshwar Singh's involvement in Shailendra Singh's purchases

---

[1] At the time it filed its opposition, the Government did not have before it Defendant Surjit Singh's motion to join Defendant Rajeshwar Singh's motion. In its Opposition, however, the Government noted that "[t]he analysis . . . would be similar for Surjit Singh as to Rajeshwar Singh." Gov't Opp. Rajeshwar Singh Mot. 9 n. 5.

1    will be based on documentary evidence,
     evidence of former bosses, and evidence from
2    an escrow agent. All of these witnesses will
     be testifying anyway. For example, on April
3    24, 2007, following the completion of the
     Blisted Way sale, Rajeshwar Singh received a
4    commission check from the mortgage brokerage
     firm he worked for with the memo line
5    "Singh." With respect to the Lahontan Court
     property, the escrow company sent the
6    commission check for the mortgage brokerage
     firm to Raj Singh. There is sufficient
7    evidence for the jury to conclude that
     Rajeshwar Singh was the loan officer on
8    Shailendra Singh's purchases.

9    Fourth, the acts are sufficiently similar. It
     is very similar conduct with Rajeshwar Singh
10   conspiring again to defraud lenders. This
     time instead of using Anita Sharma or Duane
11   Coleman or Satnam Satnam as the straw buyers,
     Rajeshwar Singh used Shailendra Singh. Just
12   as with the loan applications and supporting
     document for Sharma, Coleman, and Satnam,
13   Shailendra Singh represented in the same
     month, to two separate lenders, that he would
14   live in the homes he purchased. Just as with
     Sharma, Coleman, and Satnam, there are
15   misrepresentations about income and
     liabilities. Just as with Sharma, Coleman,
16   and Satnam, Rajeshwar Singh was the loan
     officer for these properties. Similarity is a
17   measure of probative value. <u>Ramirez-Jiminez</u>,
     967 F.2d at 1326.
18

19   Gov't Opp. Rajeshwar Singh Mot. 11:10-12:22. Defendant Rajeshwar

20   Singh offers no reply.

21        The Government next argues:

22        Between November of 2004 until December of
          2005, Rajeshwar Singh himself purchased six
23        homes funding the purchases through loans. He
          told the lenders from which he borrowed that
24        "he will occupy, establish, and use the
          Property as [his] principal residence within
25        60 days" and "shall continue to occupy the
          Property" as his principal residence "for at
26        least one year after the date of occupancy."
          As the economy started to fall, Rajeshwar
27        Singh sold all of these six properties to
          straw-buyers Anita Sharma, Duane Coleman, and
28        Satnam Satnam in the charged scheme. Evidence

of Rajeshwar Singh's fraudulent purchases of properties should be admitted as Rule 404(b) evidence as to him. This is classic Rule 404(b) evidence.

First, the evidence concerning Rajeshwar Singh's participation in other fraudulent purchases tends to prove a material fact. As discussed above, uncharged acts of loan fraud are admissible to prove plan, knowledge, absence of mistake, and intent to defraud lenders. Hicks, 217 F.3d at 1046-47; Jenkins, 785 F.2d at 1395. Here Rajeshwar Singh's involvement in lying to facilitate his own purchases of properties goes to his opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake in the conduct alleged in the indictment in this case. Rajeshwar Singh had previously lied on loans to get lenders to give him money. His own conduct goes to his knowledge of the lies that were being told on loan applications in order for lenders to lend money and that he had the intent to defraud lenders and influence them to part with money through the use of misrepresentations. Rajeshwar Singh knew what lies needed to be made in order to get money from his own personal experience. In addition, the evidence goes directly to Rajeshwar Singh's identity and absence of mistake. It was Rajeshwar Singh making these false representations to lenders on behalf of Sharma, Coleman, and Satnam, and he was not making a mistake.

Second, Rajeshwar Singh's conduct is not too remote in time. "Courts have allowed Rule 404(b) evidence to be admitted where ten years or longer periods of time have passed." Estrada, 453 F.3d at 1213; see Tsinnijinnie, 91 F.3d at 1289 (holding two years not too remote); Ayers, 924 F.2d at 1474 (holding 404(b) permitted for subsequent conduct that began in late 1985 when alleged conspiracy ended on or about in March 1985). Here the fraud associated with the Sharma, Coleman and Satnam properties lasted from approximately mid-2006 to mid-2007. Rajeshwar Singh's fraud lasted from approximately November 2004 to December 2005. This is not too remote in time.

Third, there is sufficient evidence to support a finding that the defendant

committed the acts. The evidence of Rajeshwar Singh's involvement in his own purchases will be based on documentary evidence. He was the seller of at least seven of the properties involved in the scheme. He received money from selling these properties. He also benefitted by having his debt paid off. In order to purchase six of these properties, he signed notarized deeds of trusts that represented he would live in all the properties. Rajeshwar Singh committed the acts. "The jury can reasonably conclude that the act occurred and the defendant was the actor." Huddleston, 485 U.S. at 689.

Fourth, the acts are sufficiently similar. Rajeshwar Singh as a loan officer submitted loan applications for Sharma, Coleman, and Satnam which falsely represented that each home would be the straw buyer's primary residence. Rajeshwar Singh as a real estate investor purchased six homes within a little over a year in which he falsely represented that he would live in all of them for a year. These are the same homes he sold to the straw buyers. As discussed above, similarity is a measure of probative value. Ramirez-Jiminez, 967 F.2d at 1326 (9th Cir. 1992).

Gov't Opp. Rajeshwar Singh Mot. 13:9-14:24 (footnotes omitted).

The Government has "carr[ied] the burden of showing how the proffered evidence is relevant to one or more issues in the case," it has "articulate[d] precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." Mehrmanesh, 689 F.2d at 830. As such, Rule 404(b) is no bar to the evidence's admission.

However, even relevant otherwise admissible evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Defendant Rajeshwar Singh argues:

> The probative value of the proffered evidence of uncharged misconduct in this case is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay and needlessly presenting cumulative evidence.
>
> The government charged this case four and a half years ago. It has had four and a half years to supersede if new charges were appropriate.
>
> Now, on the eve of trial, it proposes to turn a relatively short mortgage fraud trial about four properties into a lengthy fraud trial about more than a dozen. The court should reject this attempt as needlessly confusing, misleading, and a waste of time.

Rajeshwar Singh Mot. 5:12-20.

The additional-transaction evidence the Government seeks to admit is highly probative and not "needlessly confusing, misleading, [or] a waste of time" as Defendant Rajeshwar Singh argues. Defendant Rajeshwar Singh's motion is, therefore, denied.

**B. Defendant Sharma's Motion**

Defendant Sharma argues:

> At present, the government has not satisfied the requirements to make submissions under section 404(b) as it has failed to identify evidence and a specific purpose for this evidence and show any relevancy of the evidence. For example, the government "may seek to introduce evidence concerning Satnam Satnam's purchases." Dkt. 98, attachment # 1, Rajeshwar Singh's motion in Limine. The apparent basis for the admission of evidence to be used against Ms. Sharma is that "He was romantically involved with Anita Sharma at the time." Id. The existence of Ms. Sharma of this relationship is not relevant to the uncharged conduct concerning the purchase of 2817 Temescal Drive, Modesto, California on May 16, 2007, 2280 Rosemount Lane, San Ramon, California on January 25, 2007, and 5212 Union Avenue, San Jose, California on January

18, 2007. Moreover, the evidence the
government has identified does not go to an
issue of fact against Ms. Sharma.

However, should the Court find the purchases
are relevant, the purchases should be
excluded because any relevance is outweighed
by the prejudice Ms. Sharma will suffer.
These purchases are uncharged criminal
conduct, identified as such by FBI Special
Agent Benjamin Paulin. See Dkt. 95-1,
Declaration of Benjamin Paulin, ¶ 23 ("I did
tell Ms. Sharma that she needed to take this
seriously as it appeared she had committed a
crime.") The prejudicial effect of uncharged
conduct that has been identified as criminal
conduct will undermine Ms. Sharma's ability
to receive a fair trial. In this instance
where the probative value will necessarily
expose Ms. Sharma the possibility of the jury
treating the evidence as conduct in
conformity therewith, the Court should error
[sic] on the side of caution and exclude the
materials. Moreover, the evidence is
cumulative, unnecessary, and may distract the
jury's attention. Accordingly, any evidence
proffered by the government admissible under
404(b) should be excluded.

Sharma's Mot. 6:9-7:1. The Government counters, repeating the

_Loftis_ arguments already mentioned above in discussion of

Rajeshwar Singh's Motion. The Government argues:

In this case, all defendants are charged with
participating in a scheme to defraud, as they
are charged with both mail and bank fraud.
The evidence with respect to Anita Sharma's
purchases of the San Jose, San Ramon, and
Modesto properties is evidence of the crime
charged in the indictment–the overall scheme
to defraud.

United States of America's Opp. Def. Anita Sharma's Mots. In

Limine 4:15-18.

Defendant Sharma replies arguing:

[T]he decision in _Loftis_ only addresses "Rule
404(b) to the evidence the government has
said it seeks to introduce. We do not address

22

<blockquote>

whether the evidence may be excluded for any other reason, such as under Rule 403." [Loftis, 843 F.3d at 1178]. In Ms. Sharma's moving papers, she also argues the evidence should be excluded pursuant to Rule 403 of the Rules of Evidence.

. . .

Evidence can be excluded under Rule 403 not just for a purely emotional basis as the opposition suggested. The exclusion of evidence spans from "purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme." USCS Fed Rules Evid R 403, Notes of Advisory Committee on Rules. . . . The allegations contained within the indictment rely four separate incidents that a grand jury found to support the issuance of an indictment for 3 people on 12 counts. The prejudicial nature Ms. Sharma will suffer concerns undue delay, wasting time, and/or needlessly presenting cumulative evidence. Contained within the four corners of the indictment alleges 12 counts, and the government has produced nearly 19,000 pieces of evidence, that does not include audio and video recordings. The additional purchases will waste a lot of time to present needlessly cumulative evidence.

</blockquote>

Sharma Reply 2:9-3:20.

The Government has shown that Anita Sharma's purchases of 5212 Union Avenue in San Jose, California, 2280 Rosemount Lane in San Ramon, California, and 2817 Temescal Drive in Modesto, California are relevant evidence of the alleged overall fraudulent scheme and the under the principle involved in <u>Loftis</u>. Further, the Government's filings concerning this evidence evince it has high probative value on the asserted proposition on which it is proffered and that it is not "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Therefore,

1  Defendant Sharma's motion is denied.

2  ### IX.   CONCLUSION

3         For the reasons stated above, the Government's Motion
4  In Limine No. 1 is granted; the Government's Motion In Limine No.
5  2 is denied; Defendant Sharma's Motions In Limine are granted in
6  part and denied in part—Her request to exclude the indictment is
7  granted   unless   reason   is   provided   justifying   giving   the
8  indictment, or a portion thereof to the jury, and the remainder
9  of her motions are denied; Surjit Sing's Motion to Join Rajeshwar
10  Singh's Motion to Exclude Uncharged Misconduct is Granted; but
11  Rajeshwar   Singh's   underlying   Motion   to   Exclude   Uncharged
12  Misconduct is denied.   In light of these responses to the in
13  limine motions, the hearing on in limine motions scheduled for
14  October 20, 2017, is vacated.

15  Dated:  October 19, 2017

16

17  _____

18  GARLAND E. BURRELL, JR.
   Senior United States District Judge

19

20

21

22

23

24

25

26

27

28