UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  2:13-cr-0084 TLN CSK P |
| Respondent, | (2:22-cv-1371 TLN CSK P) |
| v. | |
| SURJIT SINGH, | FINDINGS AND RECOMMENDATIONS |
| Movant. | |

Movant Surjit Singh is a federal prisoner proceeding through counsel with a motion to vacate, set aside, or correct his 2018 sentence pursuant to 28 U.S.C. § 2255.  The motion is fully briefed.  As discussed below, the § 2255 motion should be denied.

I.    PROCEDURAL HISTORY

On March 14, 2013, a federal grand jury returned an indictment charging movant and two co-defendants in a scheme to defraud.[1]  (ECF No. 1.)  Movant was charged with four counts of mail fraud, in violation of 18 U.S.C. § 1341; four counts of bank fraud, in violation of 18 U.S.C. § 1344; and four counts of making false statements on loan and credit application, in violation of 18 U.S.C. § 1014.  (Id.)  On April 5, 2013, movant made his initial appearance and pled not guilty to all counts of the indictment.  (ECF Nos. 9, 55.)

---

[1]  One of the co-defendants is the son of Surjit Singh, Rajeshwar Singh, who is also pursuing relief under § 2255.  (ECF No. 409.)

1

Jury trial commenced on October 24, 2017, before U.S. District Judge Garland E. Burrell, Jr., and lasted eight days.  (ECF Nos. 127-38.)  On November 8, 2017, movant was convicted of multiple counts of mail fraud, bank fraud, and false statements.  (ECF No. 138, 148.)

On November 9, 2018, movant was sentenced to 135 months imprisonment on each of Counts 1 through 12, to be served concurrently, for a total term of 135 months.  (ECF No. 258.)  Judgment was entered on November 19, 2018.  (ECF No. 261.)

On November 20, 2018, movant filed an appeal.  (ECF No. 265.)  On April 6, 2020, the case was reassigned to U.S. District Judge John A. Mendez.  (ECF No. 311.)

On March 19, 2021, the conviction was affirmed.  United States v. Surjit Singh, Case No. 18-10466 (9th Cir. 2021).   (ECF No. 346.)

On May 17, 2021, movant filed a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) (compassionate release).  (ECF No. 370.)  The district court denied the motion on June 22, 2021.  (ECF No. 388.)

Movant filed the motion to vacate, set aside or correct sentence on August 3, 2022. (ECF No. 415.)  On October 11, 2022, this case was reassigned to U.S. District Judge Troy L. Nunley. (ECF Nos. 425-26.)  The government filed an opposition to the motion on November 4, 2022. (ECF No. 428.)  Movant filed a reply on December 1, 2022.  (ECF No. 430.)

On December 11, 2023, movant filed a second motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) (compassionate release).  (ECF No. 433.)  On April 11, 2024, the district court denied the motion.  (ECF No. 447.)

On April 8, 2024, the case was reassigned to U.S. Magistrate Judge Chi Soo Kim.  (ECF No. 446.)  On August 27, 2025, movant filed a pro se motion to vacate and/or reduce sentence. (ECF No. 466.)  Movant withdrew the motion on September 23, 2025.  (ECF No. 470.)

II.      FACTS

From about September 2006 to about May 2007, movant Surjit Singh, Rajeshwar Singh and Anita Sharma knowingly devised, participated in, and executed a material mortgage fraud scheme involving three uncharged conspirators, by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  (ECF No. 225

2

(Presentence Report ("PSR") at ¶ 5.)  In all, the scheme involved 28 real estate transactions, including fraudulently obtained mortgage loans, in the amount of over $9 million, plus $1.6 million in fraudulently obtained loans not charged in the indictment.  (Id. at ¶ 6.)  Movant was the main leader and organizer of this mortgage fraud scheme.  He controlled the majority of the money received and recruited Sharma and two uncharged conspirators.  Movant also recruited sellers of property in the scheme.  The majority of the properties sold had been owned by movant's associates and relatives.  (Id. at ¶ 9.)  Movant's daughter testified that, although the properties were in her name, as well as the names of other family members, movant controlled all of the finances pertaining to the properties.  (Id.)

Movant and Rajeshwar Singh prepared the paperwork submitted to mortgage lending institutions on behalf of straw buyers, with false supporting documentation and information regarding the straw buyers' income, employment, liabilities, and intent to live in the properties purchased.  (Id. at ¶ 12.)  Movant directed the straw buyers or one of his associates to make multiple mortgage payments on the properties for a limited amount of time in an attempt to conceal the scheme.  (Id. at ¶ 13.)  The conspirators used at least three shell accounts, one of which was in movant's third wife's name, while another two were in his daughter's name.  (Id. at ¶ 19.)  Movant's daughter testified that her family owned "over 100 properties all around the Bay Area" and that it was common practice to have the debt or deeds issued in the names of movant's children or his current wife.  (Id.)

Movant significantly profited from all of the real estate transactions through the use of the shell companies and benefitted from his family members being sellers in the scheme.  (Id. at ¶ 22.)  Movant was held accountable for approximately $4.8 million.  (Id. at ¶ 25.)  In December 2017, after his trial and conviction on multiple counts of mail fraud, bank fraud, and false statements, movant stated on multiple occasions that he did not knowingly do anything wrong, he was just trying to help with his son's real estate transactions, he simply signed whatever papers his son told him to sign, and he did not read, speak, or understand English very well.  (Id. at ¶ 32.)

////

////

3

III.    STANDARD OF REVIEW

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence.  Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that the prisoner was sentenced in violation of the Constitution or laws of the United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255).  Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice. . . ."  Davis v. United States, 417 U.S. 333, 346 (1974).

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims he suffered ineffective assistance of counsel based on trial counsel Colin Cooper's advice to reject the government's plea agreements and proceed to trial in the face of overwhelming evidence.  (ECF No. 415-1 at 8.)

A.    Standards Governing Ineffective Assistance of Counsel Claims

To prevail on a claim of ineffective assistance of counsel, a movant must show that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

Under the first prong of the Strickland test, a movant must show that counsel's conduct failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).  Movant must rebut this presumption by demonstrating that counsel's performance was unreasonable under prevailing professional norms and was not the product of "sound trial strategy."  Strickland, 466 U.S. at 688-89.  Judicial scrutiny of defense counsel's performance is "highly deferential," and thus the court must evaluate counsel's conduct from counsel's perspective at the time it occurred, without the benefit of hindsight.  Id. at 689.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are

4

virtually unchallengeable." Strickland, 466 U.S. at 690.

"A deficient performance is one in which counsel made errors so serious that [he] was not functioning as the counsel guaranteed by the Sixth Amendment." Iaea v. Sunn, 800 F.2d 861, 864 (9th Cir. 1986) (citing Strickland, 466 U.S. at 687). To show that his trial counsel's recommendation to reject the plea deal rose to the level of constitutionally deficient conduct, movant must show that his trial counsel's advice was a "gross mischaracterization of the likely outcome presented in the case, combined with the erroneous advice on the possible effects of going to trial." Id. at 865. To merit an evidentiary hearing on the issue, movant "must establish that his allegation[s], if proven, would establish a constitutional deprivation." Turner v. Calderon, 281 F.3d 851, 890 (9th Cir. 2002) (internal quotation marks and citation omitted).

The second prong of the Strickland test requires a movant to show that counsel's conduct prejudiced movant. Strickland, 466 U.S. at 691-92. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Id. at 693. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." Id.

B.   The Parties' Arguments

Movant argues that trial counsel Colin Cooper rendered deficient advice resulting in movant rejecting a favorable plea offer and receiving a harsher sentence. Prior to trial, the government made at least two plea offers, one for an imprisonment term of about 39 months and the second for a term of six years. (ECF No. 415-1 at 9; ECF No. 415-2 at 2 (Surjit Singh Decl.).) On both occasions, trial counsel advised movant to reject the plea offer. (Id.) Movant declares that he "was told that [he] would win at trial and not to sign either offer." (ECF No. 415-2 at 2.)

Movant contends that trial counsel did not advise movant of the overwhelming weight of

the evidence the government would present at trial.  (Id.)  Movant points to the length of the government's case, which involved six days of trial, included 35 witnesses, some of whom were movant's family members, and copious exhibits.  (ECF No. 415-1 at 9.)  Further, trial counsel did not move for judgment of acquittal at the close of the government's case.  (Id. (citing Fed. R. Crim. P. 29).)  Movant argues his conviction was not challenged on direct appeal.[2]  (Id.)  Movant argues that trial counsel's advice to reject the government's plea offers in the face of overwhelming evidence and with no real defense was professionally unreasonable and denied movant his Sixth Amendment right to effective assistance of counsel.  (Id. at 10.)

Further, movant avers that had he been advised of the overwhelming evidence the government would present at trial, as well as the advantages and disadvantages of the plea agreement, movant would have accepted the plea offer and not proceeded to trial.  (Id., ECF No. 415-2 at 2.)  Movant argues that there is no indication the government would have withdrawn the plea agreement if movant agreed to plead guilty, or that the court would not have accepted the plea agreement had it been filed.  (ECF No. 415-1 at 10.)  He argues that the plea agreement would have resulted in a significantly lesser sentence than the 135 months movant received after trial.  (Id.)

In response, the United States clarifies the facts as to the plea offers as follows:  In February 2016, the United States conveyed a plea offer to movant.  It was a package deal requiring Rajeshwar Singh to plead guilty along with movant.  (ECF No. 428-1 at 590-92.)  Movant would plead guilty to one count of conspiracy to commit an offense against the United States and, with acceptance of responsibility, the government would recommend a term of 30-46 months.  (Id. at 595.)  In his declaration, movant acknowledged that his counsel conveyed this offer to him (which he characterized as a term of 39 months).  (ECF No. 415-2, ¶ 5.)

In September 2017, days after Anita Sharma decided not to testify against movant, the United States made a second, stand-alone plea offer: In exchange for pleading guilty to one count of mail fraud, movant would have a recommended sentencing range of 70-87 months.  (ECF No.

---

[2]  As noted above, an appeal from the final judgment entered on November 19, 2018, was filed on November 20, 2018, but it was filed by attorney Thomas A. Johnson.  (ECF No. 265.)

428-1 at 603; see id. at 608.)  Movant acknowledged that counsel conveyed this second offer to him (which he characterized as a term of six years).  (ECF No. 415-2, ¶ 5.)  In response to the 2017 stand-alone plea offer, Colin Cooper emailed the Assistant United States Attorney as follows:

> Your offer is unreasonable for a 71 yea [sic] old man who has never been embroiled in the Criminal Justice system before and who is alleged to have committed transgressions a decade ago.  I'm sorry, but he has indicated he can't settle this case based on your offer.

(ECF No. 428-1 at 606.)

The United States argues that, on these facts, movant has not met his burden to show grossly deficient performance by Cooper.  They point out that counsel conveyed the plea offers to movant and correctly described their terms.  They note that movant had been advised of the possible sentence he faced if he lost at trial; at his April 2013 arraignment, Judge Drozd informed him that each of the 12 counts he was charged with was "punishable by up to 30 years in prison." (See ECF No. 428-1 at 579 (transcript excerpt)).  Movant's former attorney, Clyde Blackmon, stated at the arraignment that he had gone over the indictment with movant and was sure he understood it (id. at 576), and the indictment included a penalty slip describing the potential sentences movant faced.  (ECF No. 428-1 at 579.)  The United States argues that movant knew he faced a lengthy sentence if he lost at trial and had sufficient knowledge to make an informed decision about the plea offers.

The United States further contends that Cooper's performance must be evaluated based on what he knew in February 2016 and September 2017, not in hindsight based on evidence later presented at trial.  When the plea offers were made, the United States argues, counsel could reasonably conclude that the case against movant at trial would be weak.  The United States additionally argues that movant's self-serving declaration, made years after the fact, is insufficient to show gross error.

Finally, the United States asserts that movant has failed to show prejudice from Cooper's alleged failure to give reasonable advice on the plea offers, as the evidence suggests that movant

7

was unwilling to plead guilty and go to prison.

C. Analysis

1. Deficient Performance

The Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). To prevail on a claim of ineffective assistance of counsel in connection with that stage of a criminal proceeding, a defendant must demonstrate "'gross error on the part of counsel, " Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002), and that the advice he received from his counsel was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer." Id. In addition, the Ninth Circuit has stated: "If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest." U.S. v. Leonti, 326 F.3d 1111, 1117 (9th Cir. 2003).

However, defense counsel is not "required to accurately predict what the jury or court might find." Turner, 281 F.3d at 881. Nor is counsel required to "discuss in detail the significance of a plea agreement," give an "accurate prediction of the outcome of [the] case," or "strongly recommend" the acceptance or rejection of a plea offer. Turner, 281 F.3d at 881. As the Ninth Circuit has observed, while counsel must fully advise the defendant of his options, he is not "constitutionally defective because he lacked a crystal ball." Id. Rather, counsel is "required to give the defendant the tools he needs to make an intelligent decision." Turner, 281 F.3d at 881. The relevant question is not whether "counsel's advice [was] right or wrong, but ... whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).

Here, movant has not shown that Cooper committed gross error. When the plea offers were made, movant knew the potential sentence he faced if convicted and the terms of the offers. On similar facts, the Ninth Circuit found no showing of gross error, noting that the movant was provided a copy of the indictment and informed of the sentence he faced on each count. Perez v. United States, 2022 WL 1637215, at *2 (9th Cir. May 24, 2022) (unreported); see Turner, 281 F.3d at 881. Compare Missouri v. Frye, 566 U.S. 134, 147 (2012) (defense counsel's failure to

8

communicate formal plea offers to defendant was deficient performance under Strickland).

In his 2022 declaration, movant states that Cooper told him he "would win at trial" and advised him to reject both offers. Movant argues that, in retrospect, the evidence against him was "overwhelming" and, had he known this, he would have taken a plea. In Perez, the Ninth Circuit observed: "Although [movant] now paints the evidence against him as overwhelming, a reasonable defense counsel could conclude that the case was triable" based on weaknesses in the government's case known to defense counsel at the time. Similarly, here, Cooper emailed the prosecutor that movant was rejecting the second plea offer because he was a 71-year-old man with no criminal record whose alleged criminal conduct was over ten years old. See ECF No. 428-1, Ex. 3 (Cooper's opening argument describes movant as a 71-year-old who has "[n]ever been in trouble"). Days earlier, co-defendant Sharma indicated she would not testify against movant. None of the key documents in the case were in movant's name, as the straw buyers and sellers consisted of movant's relatives and associates. Defense counsel knew that the credibility of witnesses whose names were on the fraudulent documents could be challenged. Based on what he knew at the time of the plea offers, counsel could reasonably conclude that the case against movant was weaker than it proved to be. See Lafler v. Cooper, 566 U.S. 156, 174 (2012) ("an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance."). As in Perez, Cooper could have reasonably concluded the case was triable based on weaknesses in the government's case; it was not clearly "in the client's best interest" to take a plea for a prison term ranging from 30 to 87 months. See Leonti, 326 F.3d at 1117. On these facts, movant has not shown gross error.

2. Prejudice

Even if movant had shown deficient performance by Cooper, he has not shown prejudice. Certainly, in hindsight, he would have been sentenced to a shorter term if he had accepted either the 2016 or 2017 plea offer. However, "to show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsels' deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." Frye, 566 U.S. 147. Courts should

9

not rely on "post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Lee v. U.S., 582 U.S. 357, 369 (2017).  Rather, the court looks to contemporaneous evidence substantiating movant's expressed preferences.  Id.

Here, movant has not demonstrated a reasonable probability that he would have accepted a plea offer if Cooper had advised him differently.  Taking a plea would have ensured he served a multi-year prison term as an elderly man in poor health.  (See PSR at ¶ 68, noting medical issues.)  Even after his conviction, movant insisted in the presentence investigation that he had done nothing wrong; he implied he was simply confused about the papers his son gave him to sign due to a poor grasp of English.  This shows a marked reluctance to admit guilt even after his conviction by a jury, as a plea would have required.  See also ECF No. 428-1, Ex. 13 (Ranjeshwar Singh's declaration that, when the February 2016 "package deal" offer was made, movant "did not wish to plead guilty.").  Movant has shown no reason he would have accepted either plea offer except that, in hindsight, it would have resulted in a lower sentence than being convicted of multiple crimes.  The weight of evidence suggests that, in February 2016 and September 2017, movant preferred to stick to his story of innocent confusion and hoped to avoid prison altogether.

As movant fails to meet either prong of the Strickland test, his motion to vacate his sentence due to ineffective assistance should be denied.

IV.    MOTION FOR EVIDENTIARY HEARING

Movant asserts that the court should hold an evidentiary hearing on his ineffective assistance claim under 28 U.S.C. § 2255.

In order to warrant an evidentiary hearing, movant "must establish that his allegation[s], if proven, would establish a constitutional deprivation." Turner, 281 F.3d at 890.  Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th

Cir. 1996) (internal quotation marks omitted).  Therefore, to warrant a hearing, the movant must make specific factual allegations which, if true, would entitle him to relief.  McMullen, 98 F.3d at 1159.  Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require a hearing.  United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

Here, movant's allegations that Cooper advised him to reject both plea offers, when viewed against the record, fail to state a claim for relief for the reasons set forth above.  Based on the record, it appears that Cooper advised movant to reject both plea offers because at the time of the plea offers, he believed the government's case was weak and that movant stood a good chance of prevailing at trial.  In short, counsel failed to accurately predict the trial's outcome based on what he knew at the time the offers were made.  This scenario is insufficient for relief under the Sixth Amendment, and movant has not made specific factual allegations which, if true, would entitle him to relief.  Movant's request for an evidentiary hearing should be denied.

V.    CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Movant's motion to vacate, set aside, or correct his sentence (ECF No. 415) pursuant to 28 U.S.C. § 2255 be denied; and

2.  The Clerk of the Court be directed to close the companion civil case No. 2:22-cv-1371 TLN-CSK.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the

11

specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 20, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

6/singS0084.257